UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN K. TURNER

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY

      Defendant,
      _____/

Case No. 1:14-CV-1206

HON. GORDON J. QUIST

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Karen Turner seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the

Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 49 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 7, 69). She graduated high school and obtained an associates degree. (Tr. 37). Plaintiff was previously employed as a sales attendant, store detective, and radiologic technician. (Tr. 63). Plaintiff applied for DIB on October 31, 2011, and SSI on January 12, 2012 alleging that she had been disabled since May 18, 2009 due to rheumatoid arthritis, sleep apnea, osteoarthritis, chronic back pain, depression, and anxiety. (Tr. 69, 79, 143–61). Plaintiff's applications were denied

on February 13, 2012, after which time she requested a hearing before an ALJ. (Tr. 91–101). On April 24, 2013, Plaintiff appeared with her counsel before ALJ Donna Grit with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 29–65). In a written decision dated July 12, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 7–23). Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 1–4). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Grit determined Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 12). At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) obesity; (2) positive RA factor with osteoarthritis; (3) mild obstructive sleep apnea; (4) mild degenerative changes to the lumbar spine; (5) mild degenerative changes to the cervical spine with bulging discs and no stenosis; and (6) very slight dextroconvex curvature of the thoracic spine with mild spondylosis. (Tr. 12). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 14). At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(B) in that she can lift and carry twenty pounds occasionally and ten pounds frequently with no additional limitations in her ability to push or pull. Further, the claimant would be able to stand and walk for six hours in an eight-hour workday and sit six hours in an eight-hour workday. However, the claimant would be unable to climb ladders, ropes, or scaffolds, and could only frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. Further, the claimant should avoid concentrated exposure to vibration and extremes of cold.

(Tr. 14).

The ALJ also found at the fourth step that Plaintiff could perform her past relevant work as a sales attendant, a store detective, and a radiological technician. (Tr. 22). The ALJ found that this work did not require the performance of work related activities precluded by her residual

4

functional capacity (RFC). (Tr. 22–23). Accordingly, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 18, 2009 (the alleged onset date) through July 12, 2013 (the date of the decision). (Tr. 23).

## DISCUSSION

Plaintiff's statement of errors presents the following claims:

1. The ALJ committed reversible error by not properly considering Plaintiff's obesity.

2. The ALJ committed reversible error by failing to properly weigh the evidence.

(Dkt. #14, PageID 744). The Court will discuss the issues below.

### 1. Obesity

Plaintiff first argues that because the ALJ failed to properly evaluate and consider her obesity, the RFC determination is not supported by substantial evidence.

While obesity is no longer considered a "listed impairment" by the Social Security Administration, the effect of obesity on a claimant's ability to work must be specifically considered. *See, e.g.*, SSR 02–01P, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281 (Sept. 12, 2002); *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (stating that "an ALJ must consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation") (internal quotation marks omitted).

An ALJ is not obligated to employ any "particular mode of analysis" when assessing the impact of a claimant's obesity. *See id.* at 959. Nevertheless, the ALJ must do more than merely "mention the fact of obesity in passing." *Id*. As the Sixth Circuit recently reiterated:

> "Obesity . . ." must be considered throughout the ALJ's determinations, "including when assessing an individual's residual functional capacity," precisely because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."

5

*Id.* (quoting SSR 02–1P, 2002 WL 34686281 at *1–2).

The rationale for specifically considering the effect of obesity on a claimant's ability to function and perform work activities is straightforward:

> Obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." For example, "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." The ALJ also must specifically take into account "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment," and consider how "fatigue may affect the individual's physical and mental ability to sustain work activity"—especially in "cases involving sleep apnea."

*Id.* (quoting SSR 02–1P, 2002 WL 34686281 at *3–6).

The ALJ found Plaintiff's obesity to be a severe impairment at step 2. The ALJ also found that Plaintiff's mild obstructive sleep apnea was a severe impairment. (A.R. 12). At step 4, the ALJ noted that Plaintiff used a CPAP machine for her sleep apnea, and at the administrative hearing, Plaintiff reported that the sleep apnea was no longer a problem. The ALJ further noted that since using the CPAP machine, Plaintiff slept better and did not get migraine headaches. (Tr. 15). Regarding Plaintiff's obesity, the ALJ noted a visit Plaintiff had with her primary care doctor. At the visit, Plaintiff was advised to lose weight, and the doctor noted that while movement of her limbs caused some pain, an exam revealed no decrease in her range of motion. (Tr. 18). The ALJ also noted that Plaintiff's social worker thought Plaintiff was making poor choices, and needed to adopt a formal plan to lose weight. (Tr. 18). Ultimately, the ALJ concluded:

> In combination, the claimant's reported pain from her osteoarthritis, the degenerative changes to her spine, her obesity, and the fatigue that could be caused by her obstructive sleep apnea, would limit her to light work. Significantly, the claimant indicated that she was able to walk around a store, taking breaks to stand, for about two hours . . . . In addition, the claimant's back impairments, as well as her obesity and her osteoarthritis, particularly her complaints of pain in her knees and hands, would limit the claimant to frequent climbing of ramps and stairs, balancing, stooping, kneeling,

> crouching, and crawling, and would prevent the climbing ladders, ropes, or scaffolds . . . .

(Tr. 19). The ALJ's analysis complies with Shilo because it considers the "effect obesity has upon [Plaintiff's] ability to perform routine movement and necessary physical activity within the work environment," and "consider[s] how fatigue may affect [her] physical and mental ability to sustain work activity." *Id.* (internal quotation marks omitted). The ALJ's conclusion is supported by substantial evidence through both Plaintiff's statements and other portions of the medical record. (53-54, 60, 352, 369). Accordingly, Plaintiff's claim fails.

### 2. Medical Opinions

Plaintiff alleges that she is entitled to relief because the ALJ failed to properly assess the medical opinions in the record. The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Servs.*, 1991 WL 229979, at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers v. Sec'y of Health and Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.

*See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Servs.*, 1991 WL 229979, at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

### A.     Dr. Ramona Kwapiszewski

On April 9, 2013, Dr. Kwapiszewski completed two worksheets regarding Plaintiff's physical and mental residual functional capacity. (Tr. 484–89, 491–93). The doctor concluded that Plaintiff was far more limited than the ALJ determined. After opining on various functional limitations, Dr. Kwapiszewski stated Plaintiff was "unable to obtain gainful employment due to chronic pain due to RA/OA. She suffers from moderate to severe OA [and] moderate to severe depression. She would work if able, she has always demonstrated diligence and sincerity." (Tr. 489).

It is undisputed that Dr. Kwapiszewski qualifies as a treating physician.[2] The ALJ discounted Dr. Kwapiszewski's opinion on the ground that such was not supported by the doctor's own past assessments encouraging Plaintiff to engage in exercise, and Plaintiff's own statements at the administrative hearing regarding her activities of daily living. (Tr. 21). These reasons amount to "good reasons" and are further supported by substantial evidence. (Tr. 344–403, 458–62, 473). For example, the doctor consistently told Plaintiff to exercise, and MRI results examined by Dr. Kwapiszewski were not consistent with her opinion that Plaintiff suffered from severe osteoarthritis. (Tr. 349–50, 354, 358–62). Substantial evidence thus supports the ALJ's reasons for discounting Dr. Kwapiszewski's opinion, and Plaintiff's claim of error regarding the doctor is rejected.

**B.     Dr. Hylland**

On November 15, 2011, Dr. Robert Hylland examined Plaintiff and rendered an opinion in a letter to Dr. Kwapiszewski. Dr. Hylland noted that "weight loss is crucial for [Plaintiff] to be successful in the long term." (Tr. 325). He further opined, "I do not see her disabled from gainful employment at this time but explained to her in the next six to 12 months I would like to see her gradually improve with an exercise program, dieting and pain management when prudent." (Tr. 325). The ALJ discounted the opinion because it did "not provide a function-by-function account of the claimant's limitations, and his opinion is actually a legal conclusion; the claimant is not disabled from gainful employment." (Tr. 20). The ALJ thus gave the opinion limited weight, noting that it was significant that the doctor found Plaintiff capable of performing gainful activity. (Tr. 20).

While Plaintiff argues this opinion was improperly given only limited weight because Dr. Hylland was a treating physician, it is unclear what benefit Plaintiff would derive if the opinion

---

[2] Plaintiff's brief misidentifies Dr. Kwapiszewski as Dr. Nadeau, a doctor who does not appear in the record. (Dkt. #14, PageID 745). Plaintiff's reply brief makes clear she was referring to Dr. Kwapiszewski. (Dkt. #16, PageID 768).

9

were given greater weight. The doctor does not opine on any functional limitations Plaintiff may experience, and indeed opined that Plaintiff was capable of performing substantial gainful activity. That said, even though Dr. Hylland was a treating physician, the ALJ was not bound by the doctor's conclusion regarding Plaintiff's ability or inability to work. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled."). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Sec'y of Health and Human Servs.*, 790 F.2d 450, 452 (6th Cir.1986). While the Court concludes that the ALJ's rationale is supported by substantial evidence, more significantly, Dr. Hylland's opinion is not inconsistent with the ALJ's RFC determination. Thus, whether the ALJ articulated good reasons for discounting Dr. Hylland's opinion is irrelevant as such is not inconsistent with the ALJ's RFC determination. Accordingly, this argument is rejected.[3]

### C. Dr. Robert Mogul

Plaintiff finally argues that the ALJ violated the Sixth Circuit's holding in *Gayheart v. Commissioner of Social Security* in giving great weight to the opinion of Dr. Robert Mogul, a non-examining physician who reviewed the record for the state disability agency and opined on Plaintiff's physical RFC. On April 30, 2012, Dr. Mogul stated that Plaintiff could occasionally lift and carry twenty pounds. She could stand and walk for about six hours in an eight hour workday, could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and occasionally crawl. (Tr.

---

[3] The Court notes that an orthopaedic surgeon, Stephen Montes, D.O., examined Plaintiff and provided a report and assessment of her ability to do work related activities. (Tr. 666–84). While Plaintiff's brief mentioned Dr. Montes, it did not address any error with respect to the ALJ's evaluation of the doctor's opinions. Rather the brief merely notes the ALJ rejected the opinion despite "his detailed findings." (Dkt. #14, PageID 745). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997). To the extent Plaintiff raises a claim of error regarding Dr. Montes, Plaintiff has waived that argument.

405–07). Plaintiff had no manipulative, visual, communicative, or environmental limitations. (Tr. 407–08). The ALJ gave the opinion "great weight," noting that it was consistent with Dr. Kwapiszewski's treatment notes and the assessment of Dr. Hylland. (Tr. 22). Plaintiff argues the ALJ's treatment of the opinion violates *Gayheart*.

In *Gayheart*, the Sixth Circuit provided guidance to ALJs regarding how to assess opinions from nonexamining sources:

> [O]pinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id*. § 404.1527(c)(6).

710 F.3d at 376. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (*quoting* 20 C.F.R. §§ 404.1527(e) (2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Brooks v. Comm'r of Soc. Sec.,* 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").

While the ALJ gave the opinion of Dr. Mogul "great weight," there is no indication in the record that the ALJ believed the opinion was entitled to controlling weight nor that the ALJ gave the opinion controlling weight. Further, consistent with 20 C.F.R. § 404.1527(c)(6), the ALJ noted Dr. Mogul's position as a reviewer for the state agency, thus pointing to the specialization of Dr. Mogul. Accordingly, the ALJ's decision to give the opinion great weight is supported by

substantial evidence.

Plaintiff also argues that weight was improperly given to Dr. Mogul because he did not review the entire record. "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Id.* (internal citations and quotation marks omitted). The record shows the ALJ considered the later additions to, among other things, Dr. Montes' opinion regarding Plaintiff's RFC. (Tr. 684). Accordingly, Plaintiff's argument lacks merit.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated: December 11, 2015                         /s/ Gordon J. Quist
                                                 GORDON J. QUIST
                                                 United States District Judge